UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JUDY A. SOUTHERLAND** | : | **DOCKET NO.  06-1621** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence in the record and is inconsistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

**BACKGROUND**

Judy A. Southerland filed applications for Disability Insurance Benefits and Supplemental Security Income on May 6, 2004, claiming she was disabled as of March 5, 2004 by blurred vision, diabetes, and carpal tunnel syndrome.  (Tr. 14).  Both applications were denied on August 26, 2004 at the initial stage of review (Tr. 19-23), and were denied again on May 24, 2006 (Tr. 11-18), following a hearing before an Administrative Law Judge ("ALJ") on April 24, 2006, at which Southerland appeared and testified (Tr. 146-170), as did vocational expert ("VE")

Jeffrey J. Peterson (Tr. 170-179). In his written decision, the ALJ determined that Southerland was not disabled under the Act, finding at Step Three of the sequential evaluation process that her diabetes was a severe impairment, however as she had no "end organ damage due to diabetes" her impairment was "not of listing severity." (Tr. 15). The ALJ then determined at Step Four that Southerland had a residual functional capacity for sedentary work, and that she could return to her past relevant work as a secretary/receptionist and office manager. (Tr. 17).

The Appeals Council denied Southerland's request for review on July 20, 2006. Therefore the ALJ's decision became the final determination of the Commissioner. (Tr. 4-7). That determination is now before this court for review.

Southerland alleges that the ALJ applied an improper legal standard in evaluating the medical evidence, erred in assessing Southerland's residual functional capacity, and erred in concluding that she can perform past relevant work.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months.  42 U.S.C. §§ 423(d)(1)(A) & 1381(a).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988).  The reviewing court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process:  (1)  Is the claimant currently working and engaged in substantial gainful activity?  (2)  Can the impairment or combination of impairments be classified as severe?  (3)  Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations?  (If so, disability is automatic.)  (4) Does the claimant's residual functional capacity permit her to perform past relevant work?  and if not, (5)  Can the claimant perform other work?  20 C.F.R. §§ 404.1520, 416.920.  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The first four steps place the burden upon the claimant.  At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work.  If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.  *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994);  *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

### Residual Functional Capacity

The ALJ's finding that claimant is not disabled is dependent on the validity of the

ALJ's determination of her residual functional capacity.  Here the ALJ's determination of the plaintiff's RFC is inconsistent with relevant legal standards, as it is not supported by substantial evidence in the record.

Southerland states that the ALJ applied an improper legal standard in evaluating the evidence of her mental impairment as well as her carpal tunnel syndrome, when he stated "[t]here is no evidence that the claimant had a severe mental impairment for 12 consecutive months" (Tr. 15), and "[t]here are no reports . . . documenting symptoms or findings associated with carpal tunnel syndrome to establish that it was a severe impairment for 12 consecutive months." (Tr. 16).  Southerland argues that the ALJ confused the duration requirement, which applies to the impairment, with the severity requirement, which determines whether the impairment prevents the claimant from working.

At the Second and Third Steps of the sequential evaluation process for determining eligibility for disability benefits, the ALJ is to consider the medical severity of a claimant's impairments to see if s/he has "a severe medically determinable physical or mental impairment [or combination of impairments] **that meets the duration requirement**," which will qualify her/him for disability benefits. C.F.R. §§ 404.1520(a)(4)(ii), (iii).

Mental Impairment

Southerland's claim of error is based on the ALJ's pairing of the words "severe" and "impairment" in his decision, which appears to merge the durational requirement with the severity standard.  There is certainly an appearance of merging these two separate issues,

however this is harmless error.[1]  The ALJ clearly considered both the severity and durational issues in his determination on Southerland's mental impairment.  There is substantial evidence in the record supporting the ALJ's findings that Southerland has neither a severe mental impairment, as that term is defined (*see, e.g., Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)), nor has she had a mental impairment that "lasted or must be expected to last for a continuous period of at least 12 months," as required by C.F.R. § 404.1509.

The Fifth Circuit has stated that subjective complaints must be corroborated at least in part by objective medical testimony.  *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).  In determining that Southerland's alleged mental impairment had little or no effect on her RFC, The ALJ stated that no medical evidence in the record indicated that Southerland had a severe mental impairment for 12 consecutive months as required by the disability statute.[2]  Taking the record as a whole, it is clear that Southerland has no documented history of mental impairment, and certainly not for 12 months.  In fact, Southerland's diagnosis of major depressive disorder was made upon a single examination by Dr. Jerry Whiteman (Tr. 136-138), that had been scheduled at the request of Southerland's representative in this matter.  (Tr. 15, 162).

Dr. Whiteman's examination resulted in a written Psychological Evaluation and its accompanying Medical Source Statement of Ability to do Work-Related Activities (Mental)

---

[1] "The harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). 'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.' *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988))." *Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005).

[2] "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.  To meet this definition you must have a severe impairment(s) that makes you unable to do your past relevant work . . . or any substantial gainful work that exists in the national economy."  C.F.R. § 404.1505(a).

containing sufficient internal conflicts that they make the validity of the report and medical source statement as well as the doctor's credibility questionable. For example, Dr. Whiteman notes in the psychological report that Southerland's "general fund of information and long-term memory skills appear to be within normal limits," her "judgment and insight reflect knowledge of socially appropriate behavior and emergency responses," and her short-term memory and concentration skills are adequate. Confusingly, he contradicts himself in this same page of narrative, stating a few lines later in the report that Southerland may have problems in concentration. (Tr. 137). Then, on the medical source statement, Dr. Whiteman analyzes memory problems and inappropriate behavior problems which directly contradict most of his findings in the psychological report. On the source statement, Dr. Whiteman notes that Southerland's ability to understand, remember and carry out short, simple instructions is moderately impaired by her depression and chronic pain, that her ability to understand, remember and carry out detailed instructions is markedly impaired by her depression and chronic pain, and that her ability to make judgments on simple work-related decisions is markedly impaired. (Tr. 139). Dr. Whiteman also indicated that Southerland had a markedly impaired ability to interact appropriately with the public, supervisors and co-workers, and that she would have marked difficulty responding appropriately to work pressures or changes in a routine work setting. (Tr. 140). Dr. Whiteman did not indicate a rationale or any supporting medical evidence for his assessment of these limitations; he did not resolve conflicting statements in the two documents.

    In light of Dr. Whiteman's psychological report (which was first furnished to the ALJ at the hearing), the ALJ elicited testimony during the hearing about Southerland's alleged mental impairment. Southerland vaguely claimed she had been depressed and "was just not able to do

anything that I wanted to do or needed to do." (Tr. 160-161).  The ALJ asked if Southerland had ever felt the need for psychiatric treatment. (Tr. 160).  When she said that she had, the ALJ asked when that was, and if she had ever seen a doctor. *Id.*  Southerland said that when she felt she had become depressed, she "couldn't see a doctor," but did not amplify her statement (Tr. 161).  She stated that the need for such treatment might have been "last year," but that she was "not quite sure." *Id*.

Analyzing the medical evidence for corroboration of Southerland's alleged depression, the ALJ stated that "[t]he treating notes are silent with respect to any alleged symptoms related to a mental disorder.  There is no evidence that the claimant's treating source thought that she needed to be evaluated or treated by a mental health professional." (Tr. 15).  No evidence indicates that Southerland was treated for a mental impairment during the 16 months between Dr. Whiteman's examination and the disability hearing.  Southerland stated that she only saw Dr. Whiteman the one time, and that he did not prescribe medication for her depression. (Tr. 162).  Southerland did not give any further information about her alleged mental impairment or any limitation it might have caused her.  No evidence indicates that Southerland's depression meets the 12-month durational requirement of the regulations.

The ALJ reviewed the issue of severity of impairment, and stated "[t]here is no evidence that the claimant had a severe mental impairment for 12 consecutive months.  In arriving at this conclusion, the term 'severe' as defined in the regulations, has been given the same construction as that pronounced by the Court of Appeals for the Fifth Circuit." (Tr. 15).  In *Stone v. Heckler*, the Fifth Circuit interpreted the term "severe" found in 20 C.F.R. § 404.1520(c) and determined that an impairment is "considered not severe only if it is a slight abnormality" that has such a

"minimal effect on the individual that it would not be expected to interfere with an individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). *See also Loza v. Apfel*, 219 F.3d 378, 390-91 (5th Cir. 2000).

It is also noteworthy that Southerland listed "blurred vision, diabetic, carpal tunnel" as the illnesses, injuries or conditions limiting her ability to work (Tr. 78), and did not name depression or any other mental impairment in her filing for disability benefits. Since the entire history of Southerland's alleged mental impairment consists of the scanty information provided at the hearing and the contradictory analyses provided in the report and medical source statement by Dr.Whiteman, and taking all the above factors into consideration, I find that the ALJ's conclusion that Southerland's mental impairment poses no limitation requiring amendment of her RFC is supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

Carpal Tunnel Syndrome

The ALJ states that while Southerland has been tested and shown to have carpal tunnel syndrome,[3] she has provided no medical evidence showing that carpal tunnel syndrome has affected her daily activities for a 12-month period.

Southerland's carpal tunnel syndrome was diagnosed during a consultative examination scheduled by the Social Security Administration with Dr. Joshua Willis. He reported that she presented with diabetes, carpal tunnel syndrome, and other ailments. (Tr. 123). The examination notes indicate that "[Southerland has] decreased range of motion in both wrist[s] but the worst

---

[3] Defined as compression of the median nerve as it passes through the carpal tunnel in the wrist. Mark H. Beers, M.D. and Robert Berkow, M.D., eds., The Merck Manual of Diagnosis and Therapy, Seventeenth Centennial Edition, p. 491-492 (Whitehouse Station, N.J. 1999).

being the right . . . consistent with carpal tunnel syndrome." (Tr. 123-125). Dr. Willis's notes refer to Southerland's complaints of daily, constant, shooting pain with "paresthesias [tingling] in her wrist with radiation into her antibrachia [forearms] and into her biceps." (Tr. 123). His musculoskeletal examination revealed positive Phalen's sign,[4] positive Tinel's sign[5] and decreased range of motion in both wrists, worse on the right. (Tr. 124). Dr. Willis assessed Southerland's range of motion and found that her dorsiflexion was 25 degrees on the right wrist and 45 degrees on the left, that she had pain on palmar flexion, with approximately 45 degrees on the right and 60 degrees on the left. Dr. Willis noted that Southerland had difficulty tying her shoes and letting herself out of the door of the examining room. (Tr. 125). He concluded that she "does not have the ability to handle objects very well." *Id.*

Southerland reported that pain has inhibited her ability to type and to handle objects, which affects her ability to dress herself, and her ability to complete tasks requiring handling with any speed. (Tr. 123). She stated that she could lift one pound objects. Southerland also said she could perform some household chores, such as vacuuming, sweeping, mopping, cooking, washing dishes and grocery shopping, but that it would take a long time to do them. *Id.* Southerland testified that she found it difficult to pick up a penny or to count money. (Tr. 153). She completed a Disability Report - Adult, in which she reported that she was "unable to hold things, she could not make a fist, and she dropped things all the time." (Tr. 16, 79).

Dr. Jeffrey Falud, the agency consultant completing a Physical Residual Functional

---

[4] A wrist flexion maneuver which is used as a test to diagnose carpal tunnel syndrome. *Id.*

[5] A test for carpal tunnel syndrome, in which tingling (paresthesia) is produced by tapping with a reflex hammer at the volar surface of the wrist over the site of the median nerve and carpal tunnel. *Id.*

Capacity Assessment, noted that Southerland "does not have the ability to grasp objects very well" and that "[s]he has difficulty w/ gait and standing–limps when she walks and favors left side." (Tr. 128). But although Dr. Falud stated that Southerland ability to handle or finger is "limited to occasionally due to decreased ROM in both wrists consistent w/ carpal tunnel syndrome" (Tr. 130), he nevertheless determined that she had an unlimited ability to push and/or pull. (Tr. 128). Dr. Falud also stated that Southerland had difficulty standing and walking, however he determined that she could stand or walk about 6 hours in an 8-hour workday, and that she had no postural limitations. (Tr. 128). Dr. Falud's assessment does not state how he determined the extent of Southerland's impairments, or how he concluded that a "light RFC with limitations in grasping and handling" would be appropriate. (Tr. 126).

No other RFC report is included in the record, however the RFC determined by the ALJ is for a full range of sedentary work, with no limitations in grasping and handling despite Dr. Falud's recommendation and the report of Dr. Willis's examination. The ALJ concluded his analysis by stating that Southerland's medical records do not indicate that she underwent a nerve conduction study to confirm the carpal tunnel syndrome diagnosis, and that carpal tunnel syndrome "is a treatable condition with surgery that requires only a short recuperative period," and is therefore not disabling. (Tr. 16). Neither the physician who examined Southerland nor the physician consultant who reviewed her medical records discussed surgery, or suggested that Southerland might be cured should she have surgery. Nothing in the record indicates that surgery was a factor in Southerland's case. Furthermore, both physicians assigned functional limitations due to carpal tunnel syndrome which were ignored by the ALJ.

The ALJ gives no indication as to the reports he considered in determining that "no

findings . . . indicate that sedentary work is precluded," nor does he indicate the basis for ignoring the agency physician's recommendation that Southerland's RFC include limitations in grasping and handling. Accordingly, the ALJ's assessment of Southerland's RFC is not supported by substantial evidence, and is therefore inconsistent with relevant legal standards.

IT IS RECOMMENDED that the Commissioner's decision be overturned, and that this matter be remanded for further proceedings in accordance with the findings herein.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 4th day of October, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE